815 F.2d 637
 125 L.R.R.M. (BNA) 2173, 55 USLW 2628,
106 Lab.Cas. P 12,311
 INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, LOCAL UNION 1516,
and International Longshoremen's Association,
Local Union 1410-1, Plaintiffs-Appellees,
v.
INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, an International
Union, Defendant-Appellant.
 No. 86-7553.
 United States Court of Appeals,
Eleventh Circuit.
 April 24, 1987.
 
 Charles R. Goldburg, Thomas W. Gleason, P.A., New York City, for defendant-appellant.
 J. Cecil Gardner, Lattof & Gardner, Mobile, Ala., for Local 1410-1.
 Appeal from the United States District Court for the Southern District of Alabama.
 Before RONEY, Chief Judge, HATCHETT, Circuit Judge, and TUTTLE, Senior Circuit Judge.
 HATCHETT, Circuit Judge:
 
 
 1
 The International Longshoremen's Association (ILA) appeals the district court's decision that ILA acted in violation of its constitution and the district court's imposition of an injunction prohibiting ILA from revoking the charter of one of its locals. We affirm.
 
 FACTS
 
 2
 Appellant, International Longshoremen's Association, is an international labor organization representing longshoremen and port employees. Appellee, International Longshoremen's Association Local Union 1410-1 (Local 1410-1), is an affiliated local of the ILA representing warehouse workers employed in the Port of Mobile, Alabama. Local 1410, like 1410-1, is also an affiliated local of the ILA representing general longshore workers employed in the Port of Mobile. The ILA constitution is the contractual document that governs the relationship between the ILA and its locals.
 
 
 3
 On October 3, 1984, the president of Local 1410, H. Murray Gardner, wrote the president of the ILA, Thomas W. Gleason, stating that Local 1410-1 had only six members in good standing. The letter also suggested that Local 1410-1 be dissolved pursuant to article 12, section 4 of the ILA constitution, and its members merged with Local 1410.[1] Gleason referred Gardner's letter to the president of the South Atlantic and Gulf Coast District of the ILA, J.H. Raspberry, for comment on the proposed dissolution of Local 1410-1. On November 2, 1984, Raspberry wrote Gleason recommending the merger of Local 1410-1 with Local 1410. Albert L. Walton, president of Local 1410-1, received a copy of Raspberry's letter from Gleason requesting the local's view on the merger proposal. Local 1410-1 held a special meeting, adopted a resolution opposing its dissolution and merger, and on or about November 27, 1984, forwarded its resolution to the ILA.
 
 
 4
 The proposed merger of Local 1410-1 was on the agenda of the ILA executive council meeting of February 23, 1985. At the meeting, Walton argued in opposition to the proposed dissolution and merger. On March 19, 1985, the ILA notified Locals 1410 and 1410-1 that the council, in consideration of "the proposed merger of Locals 1410, 1410-1 ...," and with the approval of the South Atlantic and Gulf Coast District, determined that "Local 1410-1 members are performing in many instances the same work as Local 1410 members." The council also found that Local 1410-1 was "not functioning as a bona fide trade union since ... it is representing individuals in the same geographic area who are performing the same work as Local 1410 members."[2] The council further stated:
 
 
 5
 In accordance with article 12, section 4 of the ILA constitution, [Local 1410-1] is to be and the same [is] hereby dissolved and [its charter] is to be and the same [is] hereby revoked effective April 15, 1985, and [Local 1410-1 is] to be merged into Local 1410.
 
 
 6
 Prior to any action by the ILA, Local 1410-1 filed suit in the Circuit Court of Mobile County requesting injunctive relief to prohibit the ILA from implementing its plan to merge Local 1410-1 with Local 1410. The ILA, pursuant to 28 U.S.C. Sec. 1441, removed the case to the United States District Court for the Southern District of Alabama, Southern Division, possessing original jurisdiction under section 301 of the National Labor Relations Act, 29 U.S.C. Sec. 185.
 
 
 7
 The district court found the ILA in violation of its constitution and issued an injunction restraining the ILA (1) from revoking the charter of Local 1410-1 or merging or dissolving the local, (2) from transferring the membership of Local 1410-1 to any other local, (3) from transferring the assets of Local 1410-1 to any other local or to the ILA, or (4) from requiring Local 1410-1 to surrender its charter.
 
 
 8
 The ILA contends that its determination that the local was inactive was fair and reasonable, and that the district court could not properly substitute its finding that the local was active for the executive council's finding that the local was inactive.
 
 DISCUSSION
 
 9
 To justify its dissolution decision, the ILA charged that Local 1410-1 was not functioning as a "bona fide trade union" because it represented port workers in the same geographic area who were performing the same work as Local 1410 members. The district court found the ILA's assertion that the work performed by Local 1410-1 overlapped with that of Local 1410 was unfounded. The district court further found that such a work relationship as existed between the Mobile locals was sanctioned under ILA's constitution and existed throughout the ILA.
 
 
 10
 Additionally, the ILA asserted that Local 1410-1 was inactive in the month of February, 1985, because only four warehouse workers were employed during that month. Under article 12, section 4, of the ILA constitution, the executive council may revoke the charter of a local for reasons of "inactiveness" or if the local ceases to function as a "bona fide trade union." The evidence presented at trial, the certified membership roll of Local 1410-1, indicated twenty-nine active members in November, 1984, and a membership which never dropped below twenty-five members as of the date of trial. This evidence contradicts the ILA's characterization of Local 1410-1 as inactive and not functioning as a bona fide trade union. Also, the decision rendered by the executive council was not based upon any evidence of Local 1410-1's inactivity. The submission of such evidence to the executive council occurred over thirteen months after the decision.
 
 
 11
 Therefore, the key issue in this case is whether the ILA's characterization of Local 1410-1 during the month of February as inactive and not functioning as a bona fide trade union is reasonable under the terms of its constitution. The ILA constitution does not define "inactive."
 
 
 12
 The ILA correctly argues that the courts are generally bound to accept a union's interpretation of its own constitution, and that we so held in Local 317, Mailhandlers v. National Post Office Mail Handlers, 696 F.2d 1300 (11th Cir.1983). In Mail Handlers, however, we also held that the union's interpretation must be "fair and reasonable." Mail Handlers, 696 F.2d at 1302. We note, as did the district court, the ILA's concession that a general fall off in work available at the Port of Mobile occurred. The ILA failed to show that more warehouse work was available in February, 1985, than the four members of Local 1410-1 could perform or that the members of Local 1410-1 voluntarily chose not to work during such time.
 
 
 13
 Members of Local 1410-1 performed 517 hours of warehouse work in October, 1984; 655 hours in November, 1984; 847 hours in December, 1984; and 781 hours in January, 1985. In light of this evidence, the ILA appears to have taken completely out of context Local 1410-1's employment record for the month of February, 1985. Moreover, in the final month of the fiscal year, September, 1985, 12 members of Local 1410-1 performed a total of 848 hours of warehouse work, and members of Local 1410-1 accumulated a total of 6,742.5 hours of warehouse work during the year ending September 30, 1985. The membership in Local 1410-1, as admitted by the ILA, never fell below the twenty-five members in good standing at the time of trial.
 
 
 14
 In addition, article XIV, section 2, of the ILA constitution provides membership to "any worker who is employed or seeks employment in a trade, industry or occupation within the jurisdiction of the ILA."[3] The ILA failed to prove that members of Local 1410-1 did not seek employment, or refused to perform work during the month of February, 1985. Thus, we agree with the district court that under the facts and the evidence in this record, the ILA's characterization of Local 1410-1's status does not appear "fair and reasonable." In this instance, the district court was not obligated to blindly accept the ILA's interpretation of Local 1410-1's status. Mail Handlers, 696 F.2d 1301.
 
 
 15
 We are also convinced that under the ILA constitution, the proposed merger and dissolution of Local 1410-1 falls outside the authority granted to the executive council. The executive council may accomplish a merger and dissolution of a local only (1) if it obtains majority consent of the members of all the locals affected by the proposed merger, and (2) if less than ten members in good standing of a particular local object to the proposed dissolution. The evidence in this case is conclusive: that these conditions were not met. Thus, the plain language of the ILA constitution prohibits this proposed merger and dissolution.
 
 
 16
 The ILA also argues that the district court's grant of injunctive relief is improper because the injunction permanently prevents the ILA from dissolving or merging Local 1410-1. We differ with the ILA's interpretation of the scope and impact of the district court's injunction. The injunction prohibits the ILA from attempting to merge or dissolve Local 1410-1, or to revoke its charter under the March 19, 1985, order of the executive council. Nothing in the district court's decision nor in this opinion should imply that the ILA is forever barred from exercising lawful authority over locals where such authority is sanctioned by its constitution.
 
 
 17
 The district court properly held that the ILA attempted to do indirectly that which it was expressly prohibited from doing directly. Accordingly, we affirm the decision of the district court.
 
 
 18
 AFFIRMED.
 
 
 
 [1]
 In pertinent part, article 12, section 4 of the ILA constitution provides:
 No Local Union shall withdraw or be dissolved so long as at least ten (10) members in good standing object to its dissolution at a meeting called to consider the question. However, the Executive Council, with the approval of the District involved, shall have power to revoke the charter of any Local Union which is inactive or not functioning as a bona fide trade union. The Executive Council shall also have power to merge or consolidate two or more Local Unions whenever a majority of the members of each of the affected Local Unions has approved of such merger or consolidation at meetings duly called upon reasonable prior notice.
 
 
 [2]
 The collective bargaining agreement of Local 1410 states:
 Longshore work shall constitute the loading and discharging of all sea-going vessels, sea-going barges, LASH barges, and Seabee barges, securing of cargo and fitting ships to load cargo of any kind, handling ship lines, driving tractors and lift machines, trucking all general cargo to or from ship to pile; and to load ship stores, except where ship stores are loaded by ship's crew. Longshore work will also include simply cleaning of cargo space, and preparing for cargo.
 The collective bargaining agreement of Local 1410-1 states:
 Warehouse work shall constitute loading or unloading cars, trucks, non-sea-going cargos, segregation of cargo, sack sewers, sweepers and stripping containers under 19 feet 2 inches, and stacking or coopering of cargo, to the extent that this work is performed by the contracting stevedoring companies. Whenever recoopering, segregation or separating of cargo may be done by MSSA [Mobile Steamship Association] (or its members) it shall be done by employees represented by Local 1410-1 and there shall be no subcontracting or reassignment of such work unless such subcontract or reassignment results in the work being done by employees represented by Local 1410-1.
 
 
 [3]
 Article XIV, section 2 of the ILA constitution provides that:
 [A]ny worker who is employed or seeks employment in a trade, industry or occupation within the jurisdiction of the ILA, shall be eligible to apply for membership and shall be admitted to membership thirty days after application unless just cause can be shown for rejection of the application.