**LOCAL NO. 48, UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, et al., Plaintiffs, Appellants,**

v.

**UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, et al., Defendants, Appellees.**

No. 90–1594.

United States Court of Appeals, First Circuit.

Heard Nov. 7, 1990.

Decided Dec. 7, 1990.

J. William Gagne, Jr., Hartford, Conn., with whom Harry B. Elliott, Jr., Prospect, Conn., and Gagne & Collins, Hartford, Conn., were on brief, for plaintiffs, appellants.

Christopher N. Souris, with whom Michael A. Feinberg and Feinberg, Charnas & Schwartz, Boston, Mass., were on brief, for defendants, appellees.

Before SELYA, Circuit Judge,
BROWN * and BOWNES, Senior Circuit Judges.

* Of the Fifth Circuit, sitting by designation.

1. The named defendants included the international union, (UBCJA); UBCJA's General President (Sigurd Lucassen) and district representa-

SELYA, Circuit Judge.

Local 48 of the United Brotherhood of Carpenters and Joiners of America (UBCJA) and certain of its officers, arguing that the international union had unreasonably attempted to snuff out Local 48's life, brought suit in federal district court seeking money damages, an injunction, and other relief.[1] The suit was premised upon section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185; sections 101, 302, 501, 609 of the Labor Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. §§ 411, 462, 501, 529; and 42 U.S.C. § 1985(3). The district court ruled in defendants' favor. We affirm.

## I. BACKGROUND

UBCJA (an unincorporated international labor organization comprised of chartered subordinate bodies, including local unions, district councils, and the like) decided to merge Local 48 and Local 107 (both UBCJA affiliates). Local 48, based in Fitchburg, had jurisdiction over north-central Massachusetts. It numbered roughly 315 members. Local 107, based in Worcester, had jurisdiction over an area due south of Local 48's territory. Its membership was more than double that of Local 48.

The UBCJA Constitution (Constitution) grants the General President broad discretionary authority both to determine the viability of subordinate bodies and to define local unions' territorial boundaries. In relevant part, the Constitution provides:

> The [UBCJA] is empowered, ... in the discretion of the General President subject to appeal to the General Executive Board, where the General President finds that it is in the best interests of the [UBCJA] and its members, locally or at large, to merge or consolidate Local Unions or Councils, to establish or dissolve any Local Unions or Councils, to establish or alter the trade or geographical jurisdiction of any Local Union or Council, ... including the right to establish

tive (Joseph Lia); a sister local (Local 107); and Local 107's president (Norman Vokes). We will sometimes refer to the plaintiffs, collectively, as "Local 48" and to UBCJA as "the International."

statewide, province-wide and regional Local Unions or Councils.... The vested rights of the members shall be preserved and where action as herein described is taken the General President and General Executive Board shall preserve the membership rights of the members of the affected Local Unions....

Constitution § 6–A.

In January 1990, the General President, Lucassen, ordered Local 48 merged into Local 107, effective February 1, 1990 (at which time Local 48 was to return its charter and deliver its assets and membership to Local 107). The vested membership rights of Local 48's enrollees were duly preserved. Notwithstanding, Local 48 voted to oppose the merger and appealed the order to UBCJA's General Executive Board (Board). After a hearing, the Board, finding the merger to comport with Section 6–A, sustained the order (which, under the Constitution, then became "final," that is, subject to no further review).

## II. THE INSTANT LITIGATION

Five days later, plaintiffs sued to block the merger. Their complaint contained five counts. Characterizing the merger decision as "arbitrary, unreasonable and illegal," the first three counts charged that defendants' actions violated the LMRDA and the "contract" between the UBCJA and its local unions comprised by the Constitution and bylaws. Count 4 accused Lucassen and the district representative, Lia, see supra note 1, of conspiring to deprive plaintiffs of rights guaranteed by federal law in derogation of 42 U.S.C. § 1985(3). Count 5 posited an illegal trusteeship. The International counterclaimed to enforce the merger.

The district court granted summary judgment for defendants on all counts and entered a permanent injunction restraining plaintiffs from further resisting the merger order. Plaintiffs filed a timely notice of appeal and moved for interim relief in this court. We expedited the appeal. We also stayed both the merger and the injunction, permitting Local 48 to retain its separate identity and to continue expending funds in the ordinary course of its business (but only for certain carefully circumscribed purposes).

Before us, appellants raise issues by the baker's dozen, contending that the district court's reasoning was long on icing but short on substance. We consider these offerings, first discussing the applicable summary judgment standard (Part III); then moving to a discussion of two crusty issues that surround the first three counts of plaintiffs' complaint (Parts IV, V); and thereafter examining briefly a breadbasket of lesser issues (Part VI). Given the ingredients discernible in the record, leavened by the applicable principles of law, we conclude, without serious question, that the court below committed no reversible error (Part VII).

## III. THE SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Once the movant avers "an absence of evidence to support the nonmoving party's case," Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986), the latter must establish the existence of at least one fact issue that is both "genuine" and "material." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); Medina–Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir.1990); Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir.1990). A "genuine" issue exists if the evidentiary submissions, viewed in the light most congenial to the nonmovant, will allow a rational factfinder to find in favor of either party. See Anderson, 477 U.S. at 250, 106 S.Ct. at 2511; Medina–Munoz, 896 F.2d at 8. A "material" issue exists if the factual dispute necessarily "affect[s] the outcome of the suit," Anderson, 477 U.S. at 248, 106 S.Ct. at 2510, in the sense that it "need[s]

to be resolved before the related legal issues can be decided." *Mack v. Great Atlantic and Pacific Tea Co.*, 871 F.2d 179, 181 (1st Cir.1989); *see also Garside*, 895 F.2d at 48.

■ Rule 56 does not invite a court to enter the realm of surmise. Evidence that is based on conjecture or farfetched supposition is not sufficient to derail the operation of the rule. *See Mack*, 871 F.2d at 181. By the same token, "evidence [that] is merely colorable, or [ ] not significantly probative" cannot forestall summary judgment. *See Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11 (citation omitted). Even in cases involving so ineffable a matter as motive or intent, summary judgment may be warranted "if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Munoz*, 896 F.2d at 8; *see also Rossy v. Roche Products, Inc.*, 880 F.2d 621, 624 (1st Cir.1989); *Oliver v. Digital Equipment Corp.*, 846 F.2d 103, 109–10 (1st Cir.1988).

In this case, it is important to memorialize that plaintiffs, eschewing any and all discovery, served no interrogatories and took no depositions. Nor did they engage the gears of Rule 56(f) in an effort to buy time for such discovery.[2] They must, therefore, bear the predictable consequences of the limited record which was before the district court. *See Paterson–Leitch Co. v. Massachusetts Municipal Wholesale Elec. Co.*, 840 F.2d 985, 989 (1st Cir.1988) (remarking, in connection with a party's failure to use Rule 56(f), that: "Courts, like the Deity ... most frequently ... help those who help themselves.").

## IV. THE URGE TO MERGE

In merging Local 48 into Local 107, Lucassen acted under Section 6–A of the Constitution, stating that he had determined consolidation to be in the best interests of the UBCJA and its members. In denying Local 48's appeal, the Board concluded that the decision comported with Section 6–A. Appellants do not dispute that the letter of Section 6–A gives the General President power to make such decisions and the Board power to ratify them. Rather, appellants would engraft an epibolic condition upon the exercise of these powers, requiring that the "best interests" determination be reasonable from the standpoint of all affected parties. The weight of authority is against them.

■ There is a well-established, soundly based policy of avoiding unnecessary judicial intrusion into the affairs of labor unions. *See, e.g., Motion Picture & Videotape Editors Guild, Local 776 v. International Sound Technicians, Etc., Local 695*, 800 F.2d 973, 975 (9th Cir.1986), *cert. denied*, 483 U.S. 1022, 107 S.Ct. 3267, 97 L.Ed.2d 765 (1987); *Jou–Jou Designs, Inc. v. International Ladies Garment Workers Union*, 643 F.2d 905, 911 (2d Cir.1981); *Tincher v. Piasecki*, 520 F.2d 851, 854 (7th Cir.1975). While the LMRDA is intended to protect union members against overreaching by their leaders, we have long since settled that the statute does not comprise "a license for judicial interference in the internal affairs of a union." *Howard v. United Ass'n of Journeymen & Apprentices, Etc., Local No. 131*, 560 F.2d 17, 21 (1st Cir.1977). Courts have neither a monopoly on fairness nor a sufficient expertise in the administration of labor organizations to warrant pervasive judicial intervention in union affairs. Hence, we agree with the Second Circuit that "[t]he internal operations of unions are to be left to the officials chosen by the members to manage those operations except in the very limited instances expressly provided for in the Act...." *Gurton v. Arons*, 339 F.2d 371, 375 (2d Cir.1964). This principle abides despite any opinion that a judge, or group of judges, might form concerning the wisdom of specific courses of action undertaken by unions and their democrati-

---

2. Fed.R.Civ.P. 56(f) provides:
 Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

cally elected leadership. *Cf.* XIII Homer, The Iliad ("There is a strength even in the union of very sorry men.").

 Conscious of the value of non-interference, we align ourselves squarely with those courts that have said judges should refrain from second-guessing labor organizations in respect to plausible interpretations of union constitutions. *See, e.g., Newell v. International Bhd. of Electrical Workers,* 789 F.2d 1186, 1189 (5th Cir.1986) (union's construction of its own constitution will not be invalidated unless "patently unreasonable"); *Local 334, Etc. v. United Ass'n of Journeymen,* 669 F.2d 129, 131 (3d Cir.1982) (similar); *Local Union No. 657, UBCJA v. Sidell,* 552 F.2d 1250, 1256–57 (7th Cir.) (similar), *cert. denied,* 434 U.S. 862, 98 S.Ct. 190, 54 L.Ed.2d 135 (1977); *see also Motion Picture,* 800 F.2d at 975. Leaving to one side the issue of bad faith, discussed *infra* Part V, we will uphold the International's interpretation of its own governance documents unless that interpretation is patently unreasonable.

 To be sure, some circuits have articulated the test in less rigorous terms, *see, e.g., Millwright Local No. 1079 v. UBCJA,* 878 F.2d 960, 962 (6th Cir.) (suggesting that union's interpretation must be "fair" and "reasonable"), *cert. denied,* —— U.S. ——, 110 S.Ct. 407, 107 L.Ed.2d 373 (1989); *Local 317, Nat. Post Office Mail Handlers v. National Post Office Mail Handlers,* 696 F.2d 1300, 1302 (11th Cir.1983) (same). Yet, whatever the specific formulation of the test, the circuits are in agreement that the proper focus of judicial inquiry is on the reasonableness of the union's interpretation of its constitution at the time of the

decision, not on a *post hoc* evaluation of the reasonableness of the underlying action. In other words, the critical question, uniformly, is whether the stated reason for the action was facially sufficient under the instrument of governance, or put another way, "whether there was arguable authority for the officer's act from the officer's viewpoint at the time . . . ." *Stelling v. International Bhd. of Elec. Workers, Local 1547,* 587 F.2d 1379, 1389 n. 10 (9th Cir. 1978), *cert. denied,* 442 U.S. 944, 99 S.Ct. 2890, 61 L.Ed.2d 315 (1979). If this query is answered in the affirmative, further judicial scrutiny of the decision, absent bad faith, is foreclosed.[3]

Here, the International advanced a rational explanation for the exercise of its constitutional authority to act, consistent with the letter of Section 6–A. Not only does the language of the provision vest wide discretion in the General President, but the defendants filed an affidavit in which Lucassen vouchsafed that merging Local 48 into Local 107 was part of an ongoing process of mergers and consolidations undertaken by the UBCJA throughout the United States in order to strengthen the International and enable it to represent its members more effectively. In the affidavit, Lucassen pointed specifically to ten such mergers of recent vintage in New England and New York alone, and many others elsewhere. As the evidence of an ongoing consolidation process was undisputed, no rational factfinder could say that the defendants' interpretation of Section 6–A was so implausible or patently unreasonable as to be undeserving of deference. Thus, the district court's entry of summary

---

3. Plaintiffs would have the court's role extend beyond determining whether the General President's interpretation of the union's constitution was plausible to an evaluation of the fairness with which he applied his constitutional authority and to an examination of the reasonableness of his judgment in exercising that authority. We find this meddlesome suggestion unsupported and unsupportable. Plaintiffs say that *International Longshoremen's Ass'n, Local Union 1516 v. International Longshoremen's Ass'n,* 815 F.2d 637 (11th Cir.1987) bolsters their argument—but the case cannot carry the cargo which plaintiffs load upon it. In *Longshore-*

*men's,* the Eleventh Circuit upheld the district court's injunction against a merger order on the specific ground that the international's mandate did not stem from a "fair and reasonable" interpretation of the union's constitution. *Id.* at 641. The applicable constitutional provision stated that the executive council could require the merger only if it obtained majority consent of the members of the affected locals and if fewer than 10 members of any particular local objected. *Id.* at 639. The requisite consents were not forthcoming. *Id.* Hence, there was no arguable authority for the merger order.

judgment on the issue of reasonableness was fully appropriate.

Appellants try to detour around this result, saying that they were prepared to introduce evidence at trial which would have shown that, given the locals' contrasting financial situations, it was not economically reasonable to dissolve Local 48 and deliver its assets and membership to Local 107. There are two ready answers to this asseveration. In the first place, if appellants had such ammunition, they should have armed the record when defendants invoked Rule 56. We have, after all, held with monotonous regularity that "a mere promise to produce admissible evidence at trial does not suffice to thwart the summary judgment ax." *Garside*, 895 F.2d at 49. In the second place, the promised evidence was beside the point; while it may have been relevant to a determination of whether Lucassen's decision to order the merger was wise, or well-advised, or ultimately correct, those matters were not validly in issue. The evidence, even if it existed, as explained *infra* note 4, was not material to determining whether Lucassen's interpretation of Section 6–A was so "patently unreasonable" that he had no arguable authority to act. *See Local 334*, 669 F.2d at 131.

Plaintiffs also make the related claim that the nationwide policy of consolidation was not sufficient in itself to explain why Local 48 was merged into Local 107. They assert that the General President's decision could not have been reasonable because he made no attempt to assess the economic impact of combining these two locals before issuing the merger order. But, as the district court perspicaciously observed, Lucassen's unrebutted affidavit states specific reasons for merging Local 48 into Local 107; and, even if the General President's approach could have been faulted initially on this score, any defect was cured by the Board's assessment and review—an assessment and review which unquestionably focused upon, and overrode, plaintiffs' claims of an adverse economic impact.[4]

## V. BAD FAITH

■ Although we have not previously spoken on the issue, we are of the view that a union's action, though arguably authorized by, and not patently unreasonable under, its governing documents, may still be blocked by the courts if undertaken in bad faith. Such a rule has been accepted elsewhere, *see, e.g., Motion Picture*, 800 F.2d at 975; *Monzillo v. Biller*, 735 F.2d 1456, 1458 (D.C.Cir.1984); *Busch v. Givens*, 627 F.2d 978, 981 (9th Cir.1980), and is sound in principle. Moreover, the rule strikes us as fully consonant with the idea that the judiciary, although loath to meddle in unions' internal affairs, may do so when clearly necessary to protect members' federally assured rights. On this approach, if the International acted in bad faith, the district court should not have enforced the defendants' interpretation of the Constitution.[5]

The court below concluded that plaintiffs failed to raise a genuine issue of material

---

**4.** It is true that the evidence proffered by plaintiffs to the Board does tend to show that the merger was not in the best interests of Local 48. But under the Constitution, mergers need not satisfy so parochial a standard. Section 6–A is clear, allowing the General President to order a merger if he finds "that it is in the best interests of the [UBCJA] and its members, locally *or* at large." (Emphasis supplied.) It is neither our place to overlook the drafters' purposeful use of the disjunctive nor to substitute our judgment for the General President's so that we might reweigh the competing interests. *See Sidell*, 552 F.2d at 1256. Calibrating the scales to balance local interests with international interests is one of those aspects of a union's internal operations best left outside the circumscribed sphere of judicial oversight.

**5.** Notwithstanding that several courts have indicated they might enjoin a merger if bad faith were established, *see, e.g., Sidell*, 552 F.2d at 1256, no court appears to have done so. As can be seen from the discussion *supra* at note 3, plaintiffs' citation of *Longshoremen's*, 815 F.2d 637, as an example to the contrary misses the mark. Plaintiffs' other principal authority, *UBCJA v. Dale*, 118 L.R.R.M. 3160 (C.D.Cal. 1985), *aff'd in part and rev'd in part*, 785 F.2d 317 (9th Cir.1986), falls equally far afield. There, the district court enjoined not a merger but the imposition of a trusteeship, finding evidence of a long history of bitter acrimony, tinged with racial overtones, as well as unconscionable conduct. There was no comparable evidence here.

**1054**

fact in regard to UBCJA's ostensible bad faith in ordering Local 48 merged into Local 107. On appeal, plaintiffs do not dispute the definition of "bad faith" adopted by the district court, but assign error to the court's assessment of evidentiary sufficiency. They contend that the record, viewed most favorably to them, *see Mack*, 871 F.2d at 181, contained evidence showing that the merger decision was both (1) unreasonable, and (2) the byproduct of a back-room "deal" whereby the International, in exchange for engineering the merger, obtained Local 107's agreement to combine its health and welfare fund into the International's state-wide fund (SWF).[6]

■ At the start, we address the legal standard. Noting that no court has expressly defined "bad faith" in the context of a union merger, the district judge deferred to Professor Black and treated the term as "generally implying or involving actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by any honest mistake as to one's rights or duties, but by some interested or sinister motive." *Black's Law Dictionary* 127 (5th ed. 1979). The parties do not challenge this definition and we consider it adequate. The district court went on to state that the defendants would be guilty of bad faith if, in ordering the merger, they had acted (1) contrary to the International's best interests and (2) out of self-interest. Plaintiffs take exception to this application of the bad-faith standard, and we agree that the court's formulation was incomplete: in our judgment, palpably unconscionable or outrageous actions on the part of union officials, even if arguably in the best interests of the union, may also constitute bad faith.

■ Although the lower court may have erred in this respect, the error was harmless; the plaintiffs win only the battle, not the war. The effort to reinject reasonableness into the case merely rehashes arguments earlier made and appropriately rejected. As previously demonstrated, *see supra* Part IV, the general reasonableness of the merger decision is not a matter for judicial review. Rather, the plaintiffs must show that the order was unreasonable in a special sense, *cf., e.g., Sierra Club v. Secretary of the Army*, 820 F.2d 513, 517 (1st Cir.1987) ("reasonableness" means different things in different settings), namely, that the order totally lacked any plausible foundation and was, therefore, unconscionable or outrageous. Given what is in the nisi prius roll, they cannot succeed. The General President's explanation that the merger was part of the UBCJA's long-term policy and program of consolidating local unions provided a reasoned, non-arbitrary basis for the decision. The plaintiffs' endeavor to make an end run around this stated reason by claiming that it was capricious to merge "financially sound" Local 48 into "financially unsound" Local 107 runs up against the principle of judicial non-interference in internal union affairs. Weighing the evidence of the locals' relative financial condition against the policy reasons undergirding the merger would involve the court in precisely the sort of surveillance over union decision-making that judges should abjure. Once the International has given a reasoned and founded explanation for the merger, judicial inquiry into the decision's reasonableness as a telltale for bad faith must end.

Appellants' second initiative is conceptually sounder, but lacking in evidentiary force. They theorize that Lucassen ordered the merger to repay Local 107 for agreeing to consolidate its health and welfare fund with the SWF. In support of this assertion, Local 48 proffered the affidavit of an individual plaintiff, Marcel Leger, who recounted conversations with Lia and Vokes about the merger. The gist of Leger's story is that Vokes, who ran Local 107, promised to combine the funds if Local

---

6. As a matter of background, Local 48 had transferred its own health and welfare fund into the SWF on June 1, 1989. Plaintiffs have from time to time suggested that the merger of Local 48 into Local 107 was in retaliation for their initial objection to this transfer. As the district court observed, the sequence of events renders such a supposition completely implausible. We see no need to address it further.

48 was merged into Local 107; and that, after some hesitation on Lia's part, Vokes went over Lia's head, directly to Lucassen, persuading the General President to consummate the deal. In addition, Local 48 filed an affidavit in which another plaintiff, Roger Vautour, swore that Local 107's business representative, Jack Lynch, told him that such a bargain had been struck.

Assuming *arguendo* that statements by Vokes, Lia, and Lynch can be attributed to the decisionmaker, Lucassen, for Rule 56 purposes, appellants' proffer nevertheless falls short. Pejorative characterizations alone do not show bad faith. It strains credulity well past the breaking point to characterize the supposed plan—consolidating the locals and simultaneously placing Local 107's health and welfare account under the SWF's auspices—as unconscionable; after all, Local 48's health and welfare fund was already part of the SWF, *see supra* note 6. And on this point, two other uncontroverted facts should also be remarked: (1) when, in November 1989, Local 48 was asked to consider a voluntary merger, it objected on the specific ground that Local 107's health and welfare fund had *not* been consolidated into the SWF; and (2) the proposal to merge Local 48 with another local was first made in October 1988, fourteen months before the merger with Local 107 was ordered, and involved not Local 107, but Local 49.

No useful purpose would be served were we to wax longiloquent. The most that can be said of appellants' evidence, dysphemisms aside, is that it established the existence of a deal. But the appellants stopped short of the finish line; they failed to present any proof either that the merger was not in UBCJA's best interests or that the consolidation of Local 107's health and welfare fund into the SWF was contrary to the interests of the UBCJA membership as a whole. That an arrangement entails a *quid pro quo* does not mean, or even necessarily suggest, that the exchange should not have been made. There was no authentic factbound controversy as to "best interests."

We likewise find no probative evidence of self-interest or sinister motive. There was not an iota of proof that Lucassen, Lia, or any other official of the International benefitted personally from the merger. Plaintiffs' rather feeble attempt to raise a suggestion of self-interest, through Leger's statement that Vokes made a $10,000 charitable donation at Lucassen's urging near the time that he persuaded the General President to order the merger, was inadequate as a matter of law to support an inference that Lucassen acted out of an interested or sinister motive in ordering the merger. Finally, plaintiffs failed to advance any evidence even remotely suggesting that the Board, which independently reviewed and upheld the merger decision, was motivated by bad faith.[7]

To recapitulate, we adopt a three-pronged test, holding that bad faith in ordering a merger can be found on evidence that union officials acted contrary to the international's best interests, out of self-interest, or in an unconscionable or outrageous way. That said, the present appellants have not surfaced any genuine issue of material fact as to whether UBCJA's leadership acted in bad faith in ordering the particular merger here at issue. The entry of summary judgment for the defendants on each of the first three counts was, therefore, unimpugnable.[8]

## VI. OTHER ARGUMENTS

The appellants have concocted and served a bouillabaisse of other arguments,

---

7. We note that neither Lucassen nor Lia, though both members of the Board, participated in hearing Local 48's appeal.

8. In their third statement of claim, appellants alleged that the UBCJA Constitution contained "illegal and void provisions." Their reference, apparently, was to Section 6–A. Because this issue was not preserved on appeal by either briefing or developed argumentation, we de-cline to address it. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir.) (matters not briefed or argued are waived), *cert. denied*, —— U.S. ——, 110 S.Ct. 1814, 108 L.Ed.2d 944 (1990). At any rate, other courts have encountered scant difficulty in upholding substantially the same articles. *See, e.g., Millwright Local No. 1079*, 878 F.2d at 961; *Sidell*, 552 F.2d at 1256.

none of which require protracted discussion.

## A. *Disciplinary Action.*

Appellants denigrate the merger order as constituting the unlawful imposition of discipline under LMRDA § 101(a)(5), 29 U.S.C. § 411(a)(5). In general, the cited statute protects a union member from severe discipline unless he first receives procedural due process: a written specification of charges, reasonable time to prepare a defense, and a hearing.

The law is less than clear as to when a merger can be considered "discipline," invoking the due process requirement of section 101(a)(5). Some courts have held that "[t]he *effect* of the action on members' rights is the controlling consideration." *See, e.g., Local 37, Sheet Metal Workers' Int'l Ass'n v. Sheet Metal Workers' Int'l Ass'n*, 655 F.2d 892, 896 (8th Cir.1981). Other courts have held that effect alone is not enough; "[t]o invoke the due process requirements of § 101(a)(5), some additional factor must be alleged along with mere merger or consolidation, such as invidiously discriminatory motivation." *See Millinery Workers' Union Local 55/56 v. United Hatters, Etc.*, 495 F.Supp. 60, 63 (E.D.Mo.1980). While we have not had occasion to address the question in the merger context, our resolution of it is plainly foreshadowed by our opinion in *Macaulay v. Boston Typographical Union No. 13*, 692 F.2d 201 (1st Cir.1982). There, tackling substantially the same proposition in its more generic aspect, we concluded that, to be regarded as constituting discipline under section 101(a)(5), a challenged action must be characterized by bad faith as well as untoward effect. *Id.* at 204–05.

We believe *Macaulay* is controlling. We rule, therefore, that a merger order will not be considered a disciplinary action triggering the procedural prophylaxis of LMRDA § 101(a)(5) unless the proposed merger is shown to have been ordered in bad faith *and* will probably have an adverse effect on the complainant's rights. As no bad faith has been demonstrated here, *see supra* Part V, the order merging Local 48 with Local 107 was not a disciplinary action within the purview of LMRDA § 101(a)(5).

## B. *Freedom of Speech.*

Appellants next claim that the merger was imposed as a means of suppressing their LMRDA-guaranteed freedom of speech. In relevant part, the statute assures every member of a labor organization the "right to meet and assemble freely with other members; and to express any views, arguments, or opinions...." LMRDA § 101(a)(2), 29 U.S.C. § 411(a)(2). The LMRDA further prohibits a labor organization from disciplining any of its members in retaliation for the exercise of such protected rights. *See* LMRDA § 609, 29 U.S.C. § 529.

Here, too, however, the absence of any cognizable evidence of bad faith is dispositive—for as appellants themselves concede, the statutory remedies are animated by the motivation underlying the challenged action. *See, e.g., Local No. 1 (ACA), Broadcast Employees, Int'l Bhd. of Teamsters v. International Bhd. of Teamsters*, 419 F.Supp. 263, 273 (E.D.Pa.1976) ("Invidious motive is the entire target of § 609."). Absent proof of illicit motive, i.e., bad faith, appellants' conclusory allegation that the merger was ordered to chill their expressive rights cannot withstand scrutiny.

## C. *Trusteeship.*

Count 5 of the complaint posited an illegal trusteeship.[9] Citing *San Filippo*

---

**9.** The LMRDA limits the conditions under which trusteeships can be established. It provides in pertinent part:

Trusteeship shall be established and administered by a labor organization over a subordinate body only in accordance with the constitution and bylaws of the organization which has assumed trusteeship over the subordinate body and for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures, or otherwise carrying out the legitimate objectives of such labor organization. LMRDA § 302, 29 U.S.C. § 462.

*v. UBCJA*, 525 F.2d 508 (2d Cir.1975), as authority for treating the consolidation of local unions as the functional equivalent of a trusteeship, appellants hypothesized that their case was similarly configured. The district court thought that this could not be so because the LMRDA defines a "trusteeship" as a "method of supervision or control whereby a labor organization suspends the autonomy otherwise available to a subordinate body under its constitution or bylaws," 29 U.S.C. § 402(h); and the merger order simply did not fit within the statutory definition. We agree with the lower court that, in the absence of special trappings not present here, calling a bona fide merger a "trusteeship" seems an effort to cram a square peg into a round hole.

In *San Filippo*, the international union decided to dissolve the district council and consolidate five unions into one. 525 F.2d at 510. A representative of the international was appointed to "guide the newly formed union and officers for a reasonable period of time" and to oversee its business representatives. *Id.* Opponents of the merger sued, claiming that a *de facto* trusteeship had been imposed. The district court's refusal to dismiss the case was affirmed on the ground that these facts implied "continuing supervision" and raised a legitimate question as to whether the international's ongoing "guidance" was "tantamount to a trusteeship." *Id.* at 513–14.

*San Filippo* is readily distinguishable. Here, unlike in *San Filippo*, the UBCJA did not propose to subject the surviving (merged) entity to any special restrictions or to curtail its customary autonomy after the merger took effect. Although plain-tiffs argue vehemently to the contrary—specifically, they assert that Lucassen's statement in the merger order which authorized Lia "to provide whatever assistance may be necessary to complete a smooth transition" established a sufficient indication of ongoing supervision to survive summary judgment—their exhortation generates considerably more heat than light. The quoted statement did no more than authorize Lia to facilitate completion of the merger. Given the factual context, we cannot conceive of any possible gloss on these words that could cast reasonable doubt on UBCJA's avowed intention to terminate Local 48's autonomy, consolidate it permanently into Local 107, and allow the emergent entity to operate in the normal course, unfettered by the shackles of ongoing supervision. There was no *de facto* trusteeship in this situation.[10]

### D. *Fiduciary Duty.*

■ At the time they filed suit, plaintiffs alleged that Lucassen, Lia, and Vokes breached their fiduciary duties to UBCJA in ordering the merger, and applied for leave to sue them under 29 U.S.C. § 501.[11] The district court did not explicitly rule on this application. On appeal, plaintiffs press the issue.

The circuits are divided on the reach of section 501. Some courts hold that the provision is limited to breaches of fiduciary responsibility respecting a union's money or property. *See, e.g., McNamara v. Johnston,* 522 F.2d 1157, 1163 (7th Cir.1975), *cert. denied,* 425 U.S. 911, 96 S.Ct. 1506, 47 L.Ed.2d 761 (1976); *Head v. Brotherhood of Railway Workers, Etc.,* 512 F.2d 398,

---

**10.** We leave for another day questions such as whether, or to what extent, we might embrace the reasoning of *San Filippo* in an appropriate case. We merely note that some courts have counseled caution: "Nothing in the legislative history [of the LMRDA's trusteeship provisions] indicates a Congressional intent to curb, limit or render ineffective the power to direct merger." *Millinery Workers' Union Local 55/56 v. United Hatters, Etc.,* 495 F.Supp. 60, 63 (E.D.Mo.1980) (*quoting Brewery Bottlers & Drivers Union Local 1345 v. International Bhd. of Teamsters,* 202 F.Supp. 464, 468 (E.D.N.Y.1962)).

**11.** The statute provides in pertinent part:

The officers, agents, shop stewards, and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group. It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members. . . .

29 U.S.C. § 501(a). Section 501(b) confers jurisdiction upon the federal district courts to entertain civil actions arising out of section 501(a).

400–01 (2d Cir.1975); *Gurton,* 339 F.2d at 375. Other courts have read the statute more broadly, applying it to a greater variety of official acts. *See, e.g., Stelling,* 587 F.2d at 1386–87; *Pignotti v. Local #3 Sheet Metal Workers' Int'l Ass'n,* 477 F.2d 825, 832–35 (8th Cir.), *cert. denied,* 414 U.S. 1067, 94 S.Ct. 576, 38 L.Ed.2d 472 (1973); *Sabolsky v. Budzanoski,* 457 F.2d 1245, 1250–51 (3d Cir.), *cert. denied,* 409 U.S. 853, 93 S.Ct. 65, 34 L.Ed.2d 96 (1972). *See generally* Annot., *Validity and Construction of § 501 of the Landrum–Griffin Act,* 15 A.L.R.3d 939 (1967 & Supp. 1990).

In *Carr v. Learner,* 547 F.2d 135 (1st Cir.1976), we straddled the fence, declining to map the precise contours of section 501 where doing so was not essential to our decision. *Id.* at 137. We assume the same posture today. As the merger of Local 48 into Local 107 was carried out in accordance with the Constitution and in the absence of bad faith, there is no possible legal basis, whatever the sweep of section 501, for asserting that the defendants breached their fiduciary duties. Clearly, the statute does not undercut the time-tested policy of judicial nonintervention or empower courts to decide whether internal union decisions are right or wrong, wise or unwise, provident or improvident. Apart from bad faith or its equivalent, merely implementing a properly authorized merger does not transgress 29 U.S.C. § 501.

### E. *Deprivation of Federally Secured Rights.*

We need not tarry over count 4 of plaintiffs' complaint, which alleged that defendants Lucassen and Lia engaged in a conspiracy to deprive plaintiffs of rights guaranteed by federal law in violation of 42 U.S.C. § 1985(3). Having failed to show that their federally secured rights were abrogated in any respect, it follows *a fortiori* that appellants possess no colorable claim under section 1985(3). *See Griffin v. Breckenridge,* 403 U.S. 88, 102–03, 91 S.Ct. 1790, 1798–99, 29 L.Ed.2d 338 (1971) (cause of action under § 1985(3) requires proof of an injury to, or deprivation of, a federally assured right or privilege); *Katz v. Kle-*

*hammer,* 902 F.2d 204, 207 (2d Cir.1990) (same).

## VII. CONCLUSION

We need go no further. To survive summary judgment, appellants had the burden of showing that there was a genuine factual dispute material to the outcome of the suit. *Medina–Munoz,* 896 F.2d at 10. Having failed to carry this burden, they were not entitled to a trial or to conduct a witch hunt in an effort to stop a merger which they found distasteful.

*The district court's entry of summary judgment is affirmed. The stay previously ordered is vacated and the injunction issued by the district court may take effect. The case is remanded to the district court for further proceedings consistent herewith, as may be necessary. Costs to appellees.*