953 F.2d 638
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
INTERNATIONAL ORGANIZATION OF MASTERS, MATES AND PILOTS;
Ernest K. Swanson, Individually and As A Member of the
General Executive Board, International Organization of
Masters, Mates & Pilots; Albert Groh, Individually and As A
Member of the General Executive Board, International
Organization of Masters, Mates & Pilots; William R.
Steinberg, Individually and As A Member of the General
Executive Board, International Organization of Masters,
Mates & Pilots; John T. Duff, Individually and As a Member
of the General Executive Board, International Organization
of Masters, Mates & Pilots; D.A. Boyle, Individually and As
A Member of the General Executive Board, International
Organization of Masters, Mates & Pilots; Allen C. Scott,
Individually and As A Member of the General Executive Board,
International Organization of Masters, Mates & Pilots,
Plaintiffs-Appellants,
and
George A. Quick, Individually and As A Member of the General
Executive Board, International Organization of
Masters, Mates & Pilots, Plaintiff,
v.
Timothy A. BROWN, Individually and As International
President, International Organization of Masters, Mates &
Pilots; James T. Hopkins, Jr., Individually and As
International Secretary-Treasurer, International
Organization of Masters, Mates & Pilots, Defendants-Appellees.
 No. 91-2674.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 31, 1991.
Decided Jan. 17, 1992.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore, No. CA-91-1683, M.J. Garbis, District Judge.
 Argued: W. Michel Pierson, Baltimore, Md., for appellants; Ernest Allen Cohen, Tucson, Ariz., for appellees.
 On Brief: A. Elizabeth Griffith, Baltimore, Md., for appellants; Andrew N. Janquitto, Tucson, Ariz., for appellees.
 D.Md.
 REVERSED AND REMANDED.
 Before SPROUSE and LUTTIG, Circuit Judges, and CHAPMAN, Senior Circuit Judge.
 OPINION
 LUTTIG, Circuit Judge:
 
 
 1
 Appellants, the International Organization of Masters, Mates & Pilots and a majority of the union's governing board, sought preliminary and permanent injunctions prohibiting appellees, the union's president and secretary-treasurer, from proceeding with a membership referendum. The district court denied the motion for a preliminary injunction, and appellants brought this interlocutory appeal. We reverse.
 
 I.
 
 2
 The International Organization of Masters, Mates & Pilots ("IOMMP") is a labor union of maritime workers. In 1988, appellees Timothy A. Brown and James T. Hopkins ran in the union's election against the then-incumbents for the positions of president and secretary-treasurer, respectively. After the union declared that they had lost the election, Brown and Hopkins contested the results administratively, and the Department of Labor subsequently filed suit in federal district court to have the election results invalidated. In October 1990, the district court set aside the election results on the grounds that the election had been tainted by fraud and other irregularities. Dole v. International Org. of Masters, Mates & Pilots, No. MJG-89-2071 (D.Md. Oct. 24, 1990). A new election was held under the supervision of the Department of Labor, and Brown and Hopkins were elected president and secretary-treasurer. The district court issued an order on April 5, 1991, declaring Brown and Hopkins duly elected, and they assumed office that day.
 
 
 3
 Soon after taking office, Brown and Hopkins made a number of employment decisions to which their colleagues on the General Executive Board ("GEB")[1] objected. In particular, they appointed an assistant to the president; hired a clerk; relieved an employee of his duties relating to "vertical manning"; reassigned a port agent; and designated defendant Hopkins a contracts officer. See App. at 13-16, 121-23. Thereafter, without giving prior notice to the GEB or requesting that the GEB establish referendum procedures or a Membership Ballot Committee ("MBC"), Brown and Hopkins constituted an MBC to conduct a referendum, and mailed referendum ballots to the IOMMP membership. A chief purpose of the referendum was to legitimize appellees' controversial employment decisions through membership ratification.
 
 
 4
 Plaintiffs filed suit on June 17, 1991, in federal district court to enjoin the defendants from proceeding with the scheduled referendum, alleging that the referendum violated the IOMMP constitution and section 101(a) of the Labor-Management Reporting Act of 1959, 29 U.S.C. § 411(a).[2] The district court denied the plaintiffs' motion for a preliminary injunction on August 29, 1991.[3] Plaintiffs filed a notice of appeal, see 28 U.S.C. § 1292(a)(1), and moved for an injunction pending appeal, see Fed.R.Civ.P. 62(c). After the district court denied the plaintiffs' motion for an injunction pending appeal, they filed an identical motion in this court. See Fed.R.App.P. 8(a). Judge Niemeyer denied that motion on September 28, 1991, and directed that the appeal receive expedited consideration.
 
 
 5
 We heard oral argument by the parties on October 31, 1991. For the reasons that follow, we issued an order on December 2, 1991, reversing the district court's denial of the plaintiffs' motion for a preliminary injunction, and instructed the district court to enter a preliminary injunction prohibiting the defendants from counting the ballots or otherwise proceeding with the referendum.[4]
 
 II.
 
 6
 The question before the court is whether the IOMMP constitution permitted appellees, and in particular President Brown, to initiate the membership referendum. There are only two asserted constitutional sources of authority for the president's initiation of the referendum--article VI, section 1(e) and article III, section 4(h)(5)--and we can discern no others from the constitution's text. Neither provision authorizes the union's president to initiate a referendum.
 
 A.
 
 7
 The district court apparently concluded that the president had the authority to initiate the referendum under article VI, section 1(e) of the union constitution,[5] at least where, as it found had occurred here, the GEB failed to fulfill its "essential" constitutional responsibilities to establish an MBC and procedures governing referenda. App. at 266-67.
 
 
 8
 We do not believe that article VI, section 1(e) authorizes the president to initiate a membership-wide referendum.[6] Section 1(e) imposes upon the president the affirmative duty, and authorizes him, to "supervise" the affairs of the union "in accordance with" the requirements of law and the directives of the union constitution, the GEB, and the membership. Id. at 56. Section 1(e) is not an independent source of substantive authority, except insofar as it might authorize the president to compel the organization's compliance with a requirement of law or a directive of the union constitution, the GEB, or the membership. Because in this instance there was no requirement or directive that a referendum be initiated, article VI, section 1(e) cannot support the president's action.
 
 
 9
 Even were the section interpreted to confer substantive authority on the president, that authority likely would not support the president's initiation of a referendum. The president had to be specifically empowered under the prior constitution to direct that a subordinate body referendum be conducted, see id. at 208 (art. VI, § 1(i)), notwithstanding the existence in that constitution of a similarly broad grant of supervisory authority to the president, see id. at 207 (art. VI, § 1(f)) (authorizing president to "supervise the affairs of the Organization acting to further the interests of the membership").[7]
 
 B.
 
 10
 Appellees do not even argue that article VI, section 1(e) authorized them to initiate the referendum, as the district court held. They advance the argument, which the district court apparently did not accept, that the president was authorized to initiate the referendum under article III, section 4(h)(5) of the constitution. Section 4(h)(5) provides that "[e]very member shall have the right to ... [i]nitiate a petition for referendum on any matter subject to reasonable rules to be established in a member's Work Rules." Id. at 42. Appellees argue that the president is a "member[ ] of the Union," and that
 
 
 11
 [t]he Constitution does not limit the right to initiate referenda to "every member except the President and the Secretary". The Constitution specifically ensures the right to initiate a referendum in "every member." ...
 
 
 12
 ... As a member, the President clearly had the right to initiate a referendum just as every other member had such a right under the Constitution.
 
 Appellees' Br. at 8-9.[8]
 
 13
 Section 4(h)(5) cannot serve as authorization for the president's direct initiation of the referendum. Appellees repeatedly assert that this section accords to every union member the right to initiate a referendum. See id. at 8-12. Section 4(h)(5), however, does not authorize the president, or any other member of the union, to initiate a referendum; that section only authorizes members to initiate petitions for referendum.
 
 
 14
 Appellees' counsel urged at oral argument that we equate the right to initiate a petition for a referendum with the right to initiate a referendum, and he frankly acknowledged that his case turned on our willingness to view these rights as equivalent. We decline to equate these rights. A petition for a referendum and a referendum are distinctly different undertakings. A petition for a referendum is a means by which members attempt either to obtain the right to a direct membership vote on a particular matter or to persuade those in authority to submit the matter to a membership vote. A referendum is an actual membership vote. It is evident that the drafters of the union's constitution understood a petition for a referendum to be different from an actual referendum. They expressly distinguished between the two in article V, section 12(a), which provides that an elected officer may be recalled by a secret majority referendum vote and that such a referendum shall be initiated by a petition. App. at 56.[9]
 
 
 15
 Under article III, section 4(h)(5), as appellees suggest, the president has precisely the same rights as every other union member. That right is to initiate a petition for referendum on any matter he wishes, subject to any applicable "Work Rules." Id. at 42. Had President Brown availed himself of this right, the GEB presumably would have been obliged to establish rules governing the conduct of such a petition and to define the circumstances under which the petition would result in initiation of a union-wide referendum. See id. at 62 (art. VII, § 3(c)) (GEB is authorized to establish "rules, regulations or procedures ... required for the effective management of the affairs of the Organization"); id. at 63 (art. VII, § 3(r)) (GEB is authorized to establish "Working Rules"). The GEB would have been further obliged, had the petition resulted in an actual referendum, both to promulgate rules governing the referendum and to establish an MBC to conduct the referendum. President Brown, however, simply had no authority under either article VI, section 1(e) or article III, section 4(h)(5) of the IOMMP constitution to bypass the constitutionally prescribed method of petition and proceed directly to a referendum.
 
 
 16
 Accordingly, we conclude that the president was without authority under the IOMMP constitution to initiate the challenged referendum.[10]
 
 III.
 
 17
 This court's order of December 2, 1991, reversed the district court's denial of appellants' motion for a preliminary injunction; we did not at that time direct that a permanent injunction be entered. In the interest of judicial economy, however, we may remand a case to the district court with instructions to enter a permanent injunction when the district court's denial of a motion for a preliminary injunction rests upon an erroneous legal determination and the facts have been established. Thornburgh v. American College of Obstetricians & Gynecologists, 476 U.S. 747, 757 (1986). Here, it is evident that the district court's denial of the motion for a preliminary injunction rested upon the court's determination as a matter of law that appellees were authorized by the union constitution to initiate the referendum. The court did not purport, for example, to balance the relative hardships of the parties or assess the likelihood of irreparable injury from a failure to enjoin the referendum. See Blackwelder Furniture Co. v. Seilig Mfg. Co., 550 F.2d 189, 196 (4th Cir.1977) ("[I]n this circuit the trial court standard for interlocutory injunctive relief is the balance-of-hardship test."). Because the district court erred in its interpretation of the union constitution, and no facts could be adduced that would enable appellees to overcome the constitutional infirmity of their unilateral initiation of the referendum, we do not believe it necessary to afford the district court the opportunity to conduct further hearings on the question of whether a permanent injunction should issue. The case is therefore remanded to the district court with instructions to enter a permanent injunction.
 
 CONCLUSION
 
 18
 For the foregoing reasons, the district court's denial of the plaintiffs' motion for a preliminary injunction is reversed, and the case is remanded to the district court with instructions to enter a permanent injunction prohibiting the defendants from proceeding further with the challenged referendum.
 
 
 19
 REVERSED AND REMANDED.
 
 
 20
 SPROUSE, Circuit Judge, and CHAPMAN, Senior Circuit Judge, joined.
 
 
 
 [1]
 The GEB is the governing board of the union. The Board is vested with "all of the general executive, legislative and judicial powers of the Organization," and with power over the union's "property and affairs." App. at 61-62 (art. VII, § 3 of IOMMP constitution). The Board comprises a president, a secretary-treasurer, and eight vice-presidents. See id. at 48-49 (art. V, § 2). Only six of the vice-presidents are plaintiffs in this suit against the president and secretary-treasurer
 
 
 [2]
 The plaintiffs also sought injunctions invalidating appellees' employment decisions and preventing appellees from publishing the union newspaper without GEB approval. App. at 20. Only the plaintiffs' claim that the referendum violates the IOMMP constitution is at issue in this court
 
 
 [3]
 The district court also ordered that the referendum ballots mailed to the IOMMP members in April 1991 be destroyed, and that new ballots be prepared under the supervision of a magistrate judge. The new ballots, which were mailed to the membership on October 1, 1991, were to be counted on December 3, 1991
 
 
 [4]
 We now instruct the district court to enter a permanent injunction. See infra section III
 
 
 [5]
 Appellants argue that the district court failed to address the question of whether appellees had the authority to initiate the referendum. Appellants' Br. at 19-20. While it is true that the district court did not explicitly distinguish between the president's authority to initiate the referendum and his authority to establish an MBC to conduct the referendum, the better reading of the court's memorandum and order is that the court did consider this question and concluded that appellees had the authority to initiate the referendum. The court would otherwise have had no reason to consider the evidence bearing upon "procedures governing requests for referenda." App. at 265
 
 
 [6]
 We review de novo the district court's interpretation of the union's constitution. See In re Davis Distributors, Inc., 861 F.2d 416, 419 (4th Cir.1988)
 
 
 [7]
 The parties disagree over the significance of the drafters' omission of section 1(i) from the current constitution. Appellees argue that there was simply no need for the section in the new constitution because subordinate bodies were eliminated from the union's organization. Appellees' Br. at 15. Appellants imply that article VI, section 1(i) of the prior constitution authorized the president to initiate membership-wide referenda, and they therefore attribute dispositive significance to the fact that this provision was omitted from the current constitution. Appellant's Br. at 18-19
 It is doubtful that the union's president would have been authorized to initiate a membership-wide referendum under section 1(i). The president's authority was limited by the plain terms of the provision to the direction of subordinate body referenda. It does seem unlikely, however, that after deciding to omit section 1(i) from the new constitution, the drafters would have failed to include a provision comparable to section 1(i) with an amendment extending the president's compulsory referendum authority membership-wide, if they intended the president to have such authority. The drafters carried forward other provisions with precisely such an amendment. Compare App. at 199 (art. III, § 4(h)(5) of prior constitution) (empowering every member to "[i]nitiate a petition, in his subordinate body, for a referendum on any matter") and id. at 207 (art. VI, § 1(d) of prior constitution) (authorizing president to decide grievances "submitted to him by the subordinate bodies") and id. at 208 (arv. VI, § 1(p) of prior constitution) (authorizing president to "attend and participate at meetings of subordinate bodies") with id. at 42 (art. III, § 4(h)(5) of current constitution) (empowering every member to "[i]nitiate a petition for referendum on any matter") and id. at 56 (art. VI, § 1(c) of current constitution) (authorizing president to decide grievances "upon submission ... to him by a member") and id. at 57 (art. VI, § 1(k) of current constitution) (authorizing president to "attend and participate at meetings of the membership").
 
 
 [8]
 Appellees maintain that their interpretation of the union's constitution is entitled to deference from this court. Appellees' Br. at 29-32. A union's interpretation of its own constitution ordinarily is due deference from the courts. See, e.g., Local No. 48, United Bhd. of Carpenters v. United Bhd. of Carpenters, 920 F.2d 1047, 1051-52 (1st Cir.1990). Deference is due, however, only when the interpretation is that of the union, which President Brown's interpretation is not. The IOMMP constitution empowers the GEB, not the president, to "decide on all questions of law." App. at 62 (art. VII, § 3). The GEB is vested with all of the judicial powers of the union, id. at 61, and is "[s]econd only to the Convention in authority," id. at 62. Therefore, if deference were due, it would be due to the GEB
 
 
 [9]
 The immediately preceding IOMMP constitution also distinguished between initiating a referendum and initiating a petition for referendum. Compare App. at 208 (art. VI, § 1(i) of prior constitution) (authorizing president to "direct that a referendum vote ... be held by the membership of any subordinate body on any matter") with id. at 199 (art. III, § 4(h)(5) of same constitution) (empowering every member to "[i]nitiate a petition, in his subordinate body, for a referendum on any matter")
 
 
 [10]
 Because we conclude that appellees lacked authority to initiate the referendum, and therefore that appellants are entitled to the requested injunction, we do not address appellants' arguments that the president had no authority to appoint an MBC to conduct the referendum and that the referendum is an attempted circumvention of the article X, section 1 procedures for amending the union's constitution