**MOTION PICTURE & VIDEOTAPE EDITORS GUILD, LOCAL 776, I.A.T.S.E., and International Photographers Guild, Local 659, Plaintiffs/Counter-Defendants/Appellees,**

v.

**INTERNATIONAL SOUND TECHNICIANS, CINETECHNICIANS AND TELEVISION ENGINEERS OF the MOTION PICTURE AND TELEVISION INDUSTRIES, LOCAL 695 ("LOCAL 695"), Defendants/Counter-Claimants/Appellants.**

No. 85–6559.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 6, 1986.

Decided Sept. 26, 1986.

---

Jay D. Roth, Taylor, Roth & Bush, Leo Geffner, Geffner & Satzman, Los Angeles, Cal., for plaintiffs/counter-defendants/appellees.

Timothy J. Sargent, Bodkin, McCarthy, Sargent & Smith, Los Angeles, Cal., for defendants/counter-claimants/appellants.

Before ANDERSON, PREGERSON, and REINHARDT, Circuit Judges.

J. BLAINE ANDERSON, Circuit Judge:

Local 776 filed a complaint against Local 695 alleging breach of contract, interference with prospective business advantage, and libel and/or slander. Thereafter, Local 695 filed a counterclaim which, after two amendments, was the subject of a summary judgment motion. The district court granted the motion and Local 695 appeals. The district court based its decision on the failure of Local 695 to exhaust its internal remedies. We have jurisdiction pursuant to 28 U.S.C. § 1291 and the district court's certification under Rule 54(b), Fed.R.Civ.P. We affirm, but on the ground that we decline to interfere with internal union affairs.

## FACTS

This case arises out of an intraunion dispute among three local unions, Locals 695, 659 and 776, and their parent body, the International Alliance of Theatrical Stage Employees (IATSE or Alliance). In October 1978, Local 695 and Local 659 entered into a written jurisdictional agreement (the Agreement) recognizing that a person working as a "Technical Director" belonged within Local 695 and one working as a "Video Controller" belonged within Local 659. The execution of the Agreement was contingent upon approval by the International President because any jurisdictional agreement could only be enforced by IATSE.

On October 4, 1978, the Agreement was approved and signed by the International President. It was approved that same

month by the General Executive Board (the Board) and ratified by the International Convention of IATSE. However, in 1974, the IATSE Convention passed Resolution 51 which provided that the Board would hold hearings on the entire issue of jurisdiction in the videotape field and issue a decision allocating the appropriate jurisdictions among the various local unions. The Board, after holding hearings, made a decision at its 1975 meeting in San Francisco which granted jurisdiction over technical directors to Local 776 and jurisdiction over video controllers to Local 659. Other classifications of electronic work were awarded to Local 695 and other affected local unions. This action was ratified by the 1976 IATSE Convention.

At the 1978 Convention, the delegates voted to vacate Resolution 51 and return all questions of jurisdiction in the videotape field to the International Union. As a result, the matter of jurisdiction was left to the determination of the International President, subject to appeals to the Board and the Convention. The IATSE, first by the International President, then by action of the Board in March, 1983, and subsequently by the action of the 1984 Convention approving the Board's actions, upheld the previous position of the IATSE that technical directors were within the jurisdiction of Local 776. Local 695, in its second amended counterclaim, disputes these and other actions, contending that the 1973 Agreement was never properly rescinded and is therefore still binding upon the parties involved.

## STANDARD OF REVIEW

■■■■ A review of a district court's grant of summary judgment is *de novo. Nevada v. United States,* 731 F.2d 633, 635 (9th Cir.1984). In reviewing a grant of summary judgment, the court need only decide whether there are any genuine issues of material fact remaining and whether the substantive law was correctly applied. *Amaro v. Continental Can Co.,* 724 F.2d 747, 749 (9th Cir.1984).

## DISCUSSION

■■■ There is a well-established federal policy of avoiding unnecessary interference in the internal affairs of unions. *Financial Institution Employees of America, Local 1182 v. NLRB,* 752 F.2d 356, 362 (9th Cir.1984); *cert. granted,* —— U.S. ——, 105 S.Ct. 2318, 85 L.Ed.2d 838 (1985); *Jou-Jou Designs, Inc., v. International Ladies Garment Workers Union,* 643 F.2d 905, 911 (2d Cir.1981); *Tincher v. Piasecki,* 520 F.2d 851, 854 (7th Cir.1975). *See NLRB v. Boeing Co.,* 412 U.S. 67, 93 S.Ct. 1952, 36 L.Ed.2d 752 (1973); *NLRB v. Allis-Chalmers Manufacturing Co.,* 388 U.S. 175, 87 S.Ct. 2001, 18 L.Ed.2d 1123 (1967). "It would seem self-evident that the interpretation of a union's own constitution represents virtually the ultimate in internal affairs, and the impropriety of permitting critical examination, by ... outsiders must be considered offensive." *NLRB v. Electra-Food Machinery, Inc.,* 621 F.2d 956, 958 (9th Cir.1980). As such, absent bad faith or special circumstances, an interpretation of a union constitution by union officials, as well as interpretations of the union's rules and regulations, should not be disturbed by the court. *Monzillo v. Biller,* 735 F.2d 1456, 1458 (D.C.Cir.1984); *Busch v. Givens,* 627 F.2d 978, 981 (9th Cir.1980); *Stelling v. International Brotherhood of Electrical Workers, Local 1547,* 587 F.2d 1379, 1388–89 (9th Cir.1978), *cert. denied,* 442 U.S. 944, 99 S.Ct. 2890, 61 L.Ed.2d 315 (1979); *Vestal v. Hoffa,* 451 F.2d 706, 709 (6th Cir.1971), *cert. denied,* 406 U.S. 934, 92 S.Ct. 1768, 32 L.Ed.2d 135 (1972).

The authority of the delegates to the Convention to pass, and later rescind, Resolution 51 was provided in Article Two, § 2 of the IATSE Constitution:

The supreme governmental powers of this Alliance and of its constituent members shall be vested in its duly elected delegates in Convention assembled and when the Convention is not in session, in the International Officers duly elected by the delegates or appointed in accordance with the laws herein provided.

After rescinding Resolution 51, the delegates voted to return all questions of jurisdiction in the videotape field to the International Union. Pursuant to this order, the International President had the authority to determine in which local union technical directions belonged.

In addition, the International President acted pursuant to the powers granted him by the IATSE Constitution. Article Seven, § 6 gives the President the power to interpret "the laws of this Alliance as contained in this Constitution and By-Laws" and states that his decisions shall be binding on all members and local unions. That same provision also states that the President "shall render decisions upon questions of law where the Constitution and By-Laws contain no express provision for the determination thereof." Furthermore, Article Seven, § 14 gives to the President:

> those duties usually devolving upon the International President or executive officer of similar voluntary organizations and his authority shall be that ordinarily conferred upon similar officers having broad executive powers and in construing this section it is the desire of this Alliance to insist upon a construction which will support the actions of the International President in carrying out the expressed purposes of the Alliance ..., and the International President shall have ... the power to issue such rules, regulations, orders, or mandates as he may deem necessary or advisable in the conduct of his said office.

Moreover, Article Nineteen, § 21 vests the final resolution of jurisdictional disputes between local unions in the International President:

> If any affiliated Local Union shall have a grievance against another affiliated Local Union, or if there shall be a disagreement between Local Unions respecting their respective jurisdiction, membership or policies, such grievances or disputes shall be referred by the Local Unions to the International President for his decision and his decision shall be binding upon the Local Unions involved.

The plain language of the IATSE Constitution authorized the actions taken by the delegates at the conventions, the Board, and the International President. Their actions were neither unfair nor unreasonable.

## CONCLUSION

Absent a specific limitation in a union constitution, this court will not interfere with the efforts of a union's leaders to manage the affairs of their organization. A division of jurisdiction among local unions is one such area into which this court declines to interfere. Disputes between an international and its locals, or disputes between locals, are best left for internal settlement.

A written agreement between local unions, even if subsequently ratified by the international, cannot establish a permanent, immutable allocation of jurisdiction among the locals or foreclose other locals from asserting a claim to such work. In view of the broad powers ordinarily given internationals under their constitutions and bylaws, we conclude that such agreements are subject to revision, review or cancellation by the international, so long as that body follows the procedures prescribed in its charter.

Accordingly, the district court's grant of summary judgment is

AFFIRMED.