**UNITED BROTHERHOOD OF CARPEN-
TERS AND JOINERS OF AMERICA,
LATHERS LOCAL 42–L, Plaintiff–
Counter–Defendant–Appellant,**

v.

**UNITED BROTHERHOOD OF CARPEN-
TERS AND JOINERS OF AMERICA;
Southern California District Council of
Carpenters, Defendants–Counter–Claim-
ants–Appellees.**

No. 94–55600.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 14, 1995.

Decided Jan. 16, 1996.

Jeffrey L. Cutler, Burbank, California, and Terri Tucker, Los Angeles, California, for plaintiff-counter-defendant-appellant.

Charles F. Palmer and Ronald A. McIntire, Perkins Coie, Los Angeles, California, for defendant-counter-claimant-appellees. ·

Before BOOCHEVER, T.G. NELSON and KLEINFELD, Circuit Judges.

BOOCHEVER, Circuit Judge:

United Brotherhood of Carpenters and Joiners of America, Lathers Local 42–L ("Local 42–L") appeals from a district court decision that (1) awarded summary judgment in favor of the United Brotherhood of Carpenters and Joiners of America ("the UBC") and the Southern California District Council of Carpenters ("the District Council"), on Local 42–L's claim brought pursuant to § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185 (1988), which alleged that the UBC and the District Council breached the agreement of affiliation ("the Affiliation Agreement") that merged the Lathers International Union ("the Lathers") into the UBC; (2) ruled that Local 42–L lacked standing to bring a claim to vindicate the free speech rights of its members, guaranteed by Title I of the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 412 (1988); and (3) awarded the District Council damages on its counterclaim.

This appeal raises the issue of whether interpretation of an affiliation agreement, whereby Local 42–L became affiliated with the UBC, is subject to the high degree of deference due a union's construction of its own rules, regulations and constitution, or whether the affiliation agreement is to be interpreted by the courts like any other contract, without such deference. Because in

this case we reach the same result without giving deference, we affirm without reaching that issue. We also affirm the district court's ruling that local unions may not bring claims to vindicate free speech rights of their members guaranteed by 29 U.S.C. § 411(a)(2), and the district court's award of damages.

## FACTS

In 1979, after many years of jurisdictional disputes, the Lathers entered into the Affiliation Agreement with the UBC. The Affiliation Agreement expressly provided that local unions of the Lathers ("Lather Locals") with sufficient membership and financial resources could "maintain a separate identity" within the UBC. Local 42–L is one such Lather Local.

According to the Affiliation Agreement, Lather Locals could "conduct their own affairs and have their own By–Laws" so long as they were "consistent with the Constitution and Laws of [the UBC]." The Affiliation Agreement also guaranteed that there would be no "rules and regulations instituted against ... former Lather Local Unions, except as otherwise in effect within [the UBC] structure." In turn, the Lather Locals were "subject to all the obligations as provided in the Constitution and Laws of the [UBC] and Uniform District Council and Local Union By–Laws."

In 1990, the District Council amended its bylaws to restructure the UBC's job dispatching procedures. Among other things, the amended bylaws reallocated all supplemental dues to the District Council so that it could appoint business agents for UBC locals. The changes applied equally to Lather Locals and other UBC locals.

Local 42–L objected to the restructuring and sought an exemption from the amended bylaws. The District Council and the UBC's General President both denied the exemption request. Local 42–L appealed the General President's denial to the General Executive Board. At a February 1991 meeting, the Board declined to sustain the decision of the General President by a vote of seven to six. At that time, the Board also suggested that

Local 42–L and the District Council meet with one Board member as a mediator to "arrive at an amicable disposition of the matter."

The subsequent mediation attempt was unsuccessful, and Local 42–L continued to conduct its affairs according to the pre-amendment rules. In August 1992, the Board directed Local 42–L to abide by the amended bylaws. The UBC threatened that it would revoke Local 42–L's charter if it did not comply. Local 42–L refused, claiming that it had been granted an exemption by the Board at the February 1991 meeting.

In October 1992, Local 42–L sued the UBC and the District Council under the LMRA, alleging that they had violated the Affiliation Agreement by trying to compel Local 42–L to comply with the amended bylaws. Local 42–L also alleged that the General Executive Board of the UBC violated the free speech protections of the LMRDA by reversing its earlier decision to exempt Local 42–L from the bylaw amendments in retaliation for Local 42–L's support of an opposition slate in a Board election. The District Council counterclaimed for dues Local 42–L owed under the amended bylaws.

On cross-motions for summary judgment, the district court deferred to the UBC's interpretations and found that neither the UBC nor the District Council had breached the Affiliation Agreement. The court therefore granted the UBC and District Council motions for summary judgment as to the LMRA claims. The court also dismissed Local 42–L's LMRDA claim for lack of standing, and entered judgment for the District Council on its counterclaim for damages. Local 42–L appealed.

## DISCUSSION

### 1. The LMRA Claims

We review de novo a district court's grant of summary judgment. Jesinger v. Nevada Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir.1994). Viewing the evidence in the light most favorable to the nonmoving party, we determine whether there are any genuine issues of material fact and whether the district court correctly applied the rele-

vant law. *Id.* In a contract dispute, "[s]ummary judgment is appropriate when the contract terms are clear and unambiguous, even if the parties disagree as to their meaning." *United States v. King Features Entertainment, Inc.*, 843 F.2d 394, 398 (9th Cir.1988).

■ An agreement of affiliation between unions is a contract between labor organizations. *United Ass'n of Journeymen & Apprentices of the Plumbing and Pipefitting Indus. v. Local 334*, 452 U.S. 615, 619, 101 S.Ct. 2546, 2549, 69 L.Ed.2d 280, 285 (1981). "As such, in an action brought under 29 U.S.C. § 185 it may be enforced like any other contract." *Local 1052 v. Los Angeles County Dist. Council of Carpenters*, 944 F.2d 610, 613 (9th Cir.1991).

■ Local 42–L's main argument on appeal is that the UBC violated the Affiliation Agreement by requiring Local 42–L to comply with the amended bylaws. The Affiliation Agreement provides that Lather Locals with sufficient membership and resources, such as Local 42–L, "shall conduct their own affairs and have their own By–Laws and Working Rules, which shall be consistent with the Constitution and Laws of [the UBC]. . . ." Local 42–L contends that the right to "conduct their own affairs" includes, among other things, the right to elect business agents and to allocate supplemental dues. The amended bylaws are in direct conflict with Local 42–L's proposed interpretation of the Affiliation Agreement because the bylaws afford the right to select business agents exclusively to the District Council.

The UBC maintains that the Affiliation Agreement does not guarantee Local 42–L the right to elect its own business agents, to allocate its revenues as it desires, or to be otherwise exempt from new rules that apply across the board to other UBC locals. The UBC further argues that the district court properly deferred to the UBC's interpretation of the Affiliation Agreement because there is a well-established policy of deferring to a union's interpretation of its own governing documents, absent bad faith or special circumstances.

■ It is true that a union's interpretation of its own rules, regulations, and constitution is entitled to a high degree of deference. *See Building Material & Dump Truck Drivers, Local 420 v. Traweek*, 867 F.2d 500, 511 (9th Cir.1989). Courts must be careful not to undermine union self-government. *See United States v. International Union of Petroleum & Indus. Workers*, 870 F.2d 1450, 1452 (9th Cir.1989). Therefore, as a rule, disputes between an international union and its locals should be left for internal settlement. *See Motion Picture & Videotape Editors Guild, Local 776 v. International Sound Technicians*, 800 F.2d 973, 975, *amended and reh'g denied*, 806 F.2d 1410 (9th Cir.1986), *and cert. denied*, 483 U.S. 1022, 107 S.Ct. 3267, 97 L.Ed.2d 765 (1987).

The question here, however, is whether the Affiliation Agreement constitutes an internal governing document. The UBC argues that the Affiliation Agreement is an internal governing document because it only controls the rights of persons and entities within the UBC organization. Specifically, the UBC asserts that the Affiliation Agreement functions like a union constitution or a set of bylaws because it dictates how the Lather Locals must operate within the UBC structure. The UBC contends that the Affiliation Agreement does not affect the rights of any entity external to the UBC because the Lathers, which was the non-UBC party to the Affiliation Agreement, ceased to exist after signing the agreement.

According to Local 42–L, the Affiliation Agreement is not an internal governing document. Rather, the agreement is a contract between two independent unions, the UBC and the Lathers. Moreover, Local 42–L contends that the Affiliation Agreement should not be classified as an internal document merely because the Lathers merged into the UBC. Local 42–L argues that it, as a third party beneficiary, has standing to enforce the original inter-union agreement without deferring to the UBC's interpretation.

We need not decide whether the Affiliation Agreement is an internal governing document or a contract between two unions. Even without deferring to the UBC's interpretation, we find that the Affiliation Agreement does not afford the Lather Locals a

continuing right to select business agents or to be free from paying supplemental dues.

The amended bylaws grant exclusive control over the selection of business representatives to the District Council. They apply equally to Lather Locals and other locals within the UBC and do not violate the UBC constitution. *See Local 1052*, 944 F.2d at 614–15 (upholding the amended bylaws at issue here, as applied to the Carpenter locals). Thus, the amendments at issue here are valid UBC bylaws. Under the Affiliation Agreement, Local 42–L may conduct its own affairs and have its own bylaws and working rules, but only to the extent that they are consistent with the constitution and laws of the UBC. The Affiliation Agreement, however, contains no provision making amendments to the constitution or bylaws inapplicable to the Lather Locals when all locals are treated alike. Accordingly, the Affiliation Agreement precludes Local 42–L from electing its own business representatives because to do so would be inconsistent with the amended bylaws.

■ Moreover, it is clear that the Affiliation Agreement never affirmatively grants Local 42–L the right to elect its business agents.[1] The Affiliation Agreement does, however, specifically guarantee other rights to the Lather Locals. For example, the Agreement gave the Lather Locals "protected priority on all work assignments, work allocations and job referral to lathing work, until such time as the membership of the former Lather Local Union specializing in that field is exhausted." That this specific right was detailed in the Agreement, along with its duration, indicates that the Lathers negotiated those rights which they wanted and had the bargaining power to preserve.

Accordingly, if the Lathers and the UBC had wanted the Lather Locals to select their own business agents forever, then the Affiliation Agreement would have specifically guaranteed such a right.

■ Local 42–L essentially maintains that it should be altogether exempt from any new rules that might be implemented by the UBC to restructure union operations. The problem with Local 42–L's position, however, is that it is not supported by the Affiliation Agreement. "[W]hen [a local] voluntarily affiliate[s] with [an] International [Union], it bargain[s] away a measure of control over its activities in exchange for the strength it receive[s]." *Hansen v. Guyette*, 814 F.2d 547, 551 (8th Cir.1987). Local 42–L cannot enjoy the benefits that come with being affiliated with a large international union, without bearing the burdens.

Local 42–L briefly argues that there is still a factual dispute over the meaning of the Board's February 1991 vote, which declined to sustain the General President's refusal to exempt Local 42–L from the new rules. Local 42–L argues that the vote constituted a "final" decision to reverse the General President's decision and thus was a "final" decision to grant Local 42–L an exemption from the amended bylaws. The UBC maintains that the vote was neither final nor dispositive, as evidenced by the fact that the Board subsequently ordered Local 42–L and the District Council to meet with a mediator to "arrive at an amicable disposition of the matter."

■ The Affiliation Agreement contains no provision that would affect our interpretation of the vote by the Board. The effect of such a vote involves only internal

---

1. Local 42–L argues, however, that the right to "conduct its own affairs" included the right to elect its own business agents based upon the deposition testimony of the former President of the Lathers, Charles Brodeur. He testified that during the negotiations he was "told that Lathers would reserve the right to elect their Business Agents." Brodeur, however, subsequently exercised his right under Fed.R.Civ.P. 30(e) to correct his testimony. He stated in writing that he "was told that Lathers' locals would have the same right to elect business agents that the Carpenters' locals had." Local 42–L asserts that the

correction was invalid because Brodeur did not state the reason for changing his testimony, as required by Rule 30(e). Local 42–L, however, failed to raise this objection in the district court and raises it for the first time on appeal. We, therefore, deem the objection waived. *See Purer & Co. v. Aktiebolaget Addo*, 410 F.2d 871, 876 (9th Cir.), *cert. denied*, 396 U.S. 834, 90 S.Ct. 90, 24 L.Ed.2d 84 (1969). Accordingly, we need not decide whether the earlier testimony would affect our interpretation of the Affiliation Agreement.

union affairs. Absent bad faith or special circumstances, we will refrain from interfering in the internal affairs of unions. *See Local 1052,* 944 F.2d at 613. The UBC has offered a reasonable interpretation of the significance of the vote, and Local 42–L has not shown that the UBC officials acted "contrary to the [I]nternational's best interests, out of self-interest, or in an unconscionable or outrageous way." *See id.* at 615 (quotations omitted) (defining "bad faith"). Thus, we defer to the UBC's interpretation and conclude that the Board did not grant Local 42–L an exemption from complying with the amended bylaws. *See id.*

Read as a whole, the Affiliation Agreement obligates Local 42–L to abide by the UBC constitution and the District Council bylaws. The amended bylaws were consistent with the UBC constitution and applied equally to the Lather Locals and other UBC locals. Thus, neither the UBC nor the District Council breached the Affiliation Agreement by seeking to compel Local 42–L to comply with the amended bylaws. Therefore, the district court's decision to grant summary judgment in favor of the UBC and the District Council on the LMRA claims was proper.

### 2. The LMRDA Claim

■ Local 42–L claims that the Board of the UBC voted to require Local 42–L to comply with the bylaw amendments only after Local 42–L supported opposition candidates in a Board election. Local 42–L argues that this action by the Board violated the free speech rights guaranteed to union members by Title I of the LMRDA. The district court dismissed the claim, holding that Local 42–L lacked standing to bring such a claim on behalf of its members. Standing is a question of law reviewed *de novo. Casey v. Lewis,* 4 F.3d 1516, 1518 (9th Cir.1993).

Title I of the LMRDA contains what is commonly referred to as the Laborer's Bill of Rights. *See* 29 U.S.C. § 411. Section 411(a) provides, in pertinent part, that:

**2.** Local 42–L cites *NLRB v. Local Union 497,* 795 F.2d 836 (9th Cir.1986) in support of its argu-

(1) *Equal rights* Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections, ... to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings....

(2) *Freedom of speech and assembly* Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions....

§ 411(a)(1), (2). Section 412 allows any "person" whose § 411 rights have been violated to bring a civil action in federal court. § 412.

■ The question whether a local union has standing to bring a § 412 claim for violation of free speech rights secured by § 411(a)(2) on behalf of its members appears to be one of first impression in this circuit.[2] *Cf. Local 1052,* 944 F.2d at 615 (resolving a claim brought by local union alleging violation of members' right to vote and their associational and elective rights, without commenting on the standing issue). The Sixth and Third Circuits, however, have considered whether a local union has standing to bring § 411 claims pursuant to § 412 of the LMRDA.

The Sixth Circuit has held that local unions do not have standing to bring claims for violations of § 411 pursuant to § 412 of the LMRDA. *United Brotherhood of Carpenters, Dresden Local No. 267 v. Ohio Carpenters Health & Welfare Fund,* 926 F.2d 550, 554–56 (6th Cir.1991). The court ruled that "§ 412 confers standing to sue under § 411 only on persons who are members of unions and who enjoy the primary rights of rank and file membership, and not on [local unions] or other union sub-units." *Id.* at 556. In its view, the purpose of § 411 was to protect the rights of individual union members. *Id.* Labor organizations and their local unions, therefore, were not intended to be beneficiaries of the statute's protections. *Id.*

ment. That case, however, did not involve the LMRDA and therefore is inapposite.

The Third Circuit has held that a local union does not have standing to bring a § 412 claim to vindicate the § 411(a)(1) rights of its members to attend membership meetings and to vote upon the business of such meetings. *United States v. Local 560,* 974 F.2d 315, 346 (3d Cir.1992). Like the Sixth Circuit, the Third Circuit found that the § 411(a)(1) rights to vote and attend meetings are guaranteed only "to *individual* members and not to the organization or members as a whole." *Id.* (emphasis in original). Unlike the Sixth Circuit, however, the Third Circuit held that a union does have standing to vindicate the § 411(a)(2) right to assemble freely on behalf of individual members. *Id.*

The district courts that have addressed the issue of local union standing under § 412 have reached conflicting conclusions. Some district courts have ruled that local unions do not have standing to sue to vindicate the § 411 rights of their members. *See, e.g., Commission House Drivers Union, Local 400 v. Teamsters Joint Council,* 595 F.Supp. 574, 577 (N.D.Ohio 1984) (holding that local union was not a "member of a labor organization" because LMRDA was only intended to protect rank and file union members); *Laborers Int'l Union, Local 56 v. Laborers Int'l Union,* 1975 WL 1245 (D.Conn.1975) (same).

Other district courts, however, have held that local unions have standing to bring § 412 claims to vindicate their members' § 411 rights. *See Nelson v. International Ass'n of Bridge, Structural & Ornamental Iron Workers,* 680 F.Supp. 16, 19–21 (D.D.C. 1988); *Local No. 1 (ACA) v. International Brotherhood of Teamsters,* 419 F.Supp. 263, 271–72 (E.D.Pa.1976). These courts concluded that the local unions had standing because they were "members of the international union" and § 411 guarantees the right of free expression to "every member of any labor organization." § 411(a)(2). The district courts found the local unions to be "members" because under the LMRDA, local unions are labor organizations, § 402(i), labor organizations are persons, § 402(d), and "any person who has fulfilled the requirements for membership" in a labor organization is a "member." § 402(*o*). We find this construction strained.

We hold that local unions do not have standing to bring § 412 claims to vindicate the § 411(a)(2) free speech rights of their members. The language of § 411(a)(2) appears to guarantee a right of free speech only to individuals, not to entities such as local unions. Section 411(a)(2) provides that a union "member" has the right "to express at meetings of the labor organization *his* views." § 411(a)(2) (emphasis added). If the definition of "member" included local unions, then the statute would provide that every "member" has a right "to express at meetings of the labor organization his *or its* views."

▮▮▮ Moreover, Title I of the LMRDA was "aimed at enlarged protection for members of unions paralleling certain rights guaranteed by the Federal Constitution." *Finnegan v. Leu,* 456 U.S. 431, 435, 102 S.Ct. 1867, 1870, 72 L.Ed.2d 239, 244 (1982). In fact, "[i]t is readily apparent, both from the language of these provisions [§§ 411(a)(1) and (2) ] and from the legislative history of Title I, that it was rank-and-file union members— not union officers or employees, as such— whom Congress sought to protect." *Id.* at 436–37, 102 S.Ct. at 1871, 72 L.Ed.2d at 244–45. Therefore, only individual members should have standing to bring claims alleging violations of the free speech rights guaranteed by § 411(a)(2).

We conclude that the LMRDA guarantees the right of free speech only to individual union members and not to the organization or members as a whole. Accordingly, the district court's decision to dismiss Local 42–L's Title I claim for lack of standing was proper.

### 3. *UBC's Counterclaim for damages*

▮▮▮ In its counterclaim for damages, the District Council claimed that Local 42–L was obligated to pay the dues it owed to the District Council under the amended bylaws. In its order dated March 30, 1994, the district court ruled that the District Council was entitled to damages in the amount of $1,265,-776.46. Local 42–L argues that the district court erred because it awarded damages to the District Council on a motion for summary judgment when disputed factual issues remained.

The district court did not make the award on the District Council's motion for summary judgment. Rather, the district court resolved the District Council's counterclaim for damages on the merits after the parties agreed to the accuracy of certain calculations and stipulated that the court should decide the disputed issues. Accordingly, the district court did not err in awarding damages to the District Council on its counterclaim.

## CONCLUSION

The district court's decision to grant summary judgment in favor of the UBC and District Council on the § 301 claims was proper because neither the Affiliation Agreement nor the General Executive Board of the UBC exempted Local 42–L from complying with the amended bylaws. The district court's decision to dismiss Local 42–L's Title I claim for lack of standing also was proper because local unions may not bring § 412 claims to vindicate the § 411(a)(2) free speech rights of their members. Finally, the district court did not err in awarding damages to the District Council on its counterclaim because the issue of the amount of damages was resolved on the merits, not on a motion for summary judgment.

AFFIRMED.