82 F.3d 303
 152 L.R.R.M. (BNA) 2068, 131 Lab.Cas. P 11,565,
96 Cal. Daily Op. Serv. 2880,
96 Daily Journal D.A.R. 4822
 TEAMSTERS JOINT COUNCIL NO. 42, a labor organization;
Teamsters Joint Council No. 38, a labor
organization; Michael J. Riley; Jimmy
D. Hammack, Plaintiffs-Appellants,
v.
INTERNATIONAL BROTHERHOOD OF TEAMSTERS, AFL-CIO, a labor
organization, Defendant-Appellee.
 No. 95-55881.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 5, 1996.
Decided April 26, 1996.
 
 George A. Pappy, Pappy & Davis, Los Angeles, California, for plaintiffs-appellants.
 Earl V. Brown, Jr., Associate General Counsel, International Brotherhood of Teamsters, Washington, D.C.; David Adelstein, Taylor, Roth, Bush & Geffner, Burbank, California; Richard M. Seltzer, Cohen, Weiss and Simon, New York City, for defendant-appellee.
 Appeal from the United States District Court for the Central District of California; William J. Rea, District Judge, Presiding.
 Before: BROWNING, WALLACE, and FARRIS, Circuit Judges.
 
 FARRIS, Circuit Judge
 
 1
 Michael J. Riley, Jimmy D. Hammack, and Teamsters Joint Councils Nos. 42 & 38 appeal the district court's order granting summary judgment to the International Brotherhood of Teamsters. They also appeal the district court's denial of their motion for a preliminary injunction.
 
 We affirm.OVERVIEW
 
 2
 In June of 1994, five IBT local unions affiliated with Joint Council 42 and two affiliated with Joint Council 38 filed an application with IBT General President Carey for a new Joint Council charter.[1] The local unions believed that they could join together and provide more effective services at a lower cost. In September of 1994, the General Executive Board of the IBT voted to grant a charter creating Joint Council 92, made up of these seven local unions. Joint Council 42 and Joint Council 38 remain in existence, with Joint Council 42 retaining 23 local unions representing about 95,000 members.
 
 
 3
 Plaintiffs argue that by creating a new Joint Council, the IBT: (1) infringed their rights to free speech under the Labor-Management Reporting and Disclosure Act § 101(a)(2), 29 U.S.C. § 411(a)(2); (2) breached the terms of the IBT Constitution in violation of Section 301 of the LMRA; and (3) violated LMRDA § 101(a)(4), 29 U.S.C. § 411(a)(4), by infringing on their right to sue.
 
 DISCUSSION
 
 4
 I. Free Speech Claims under LMRDA § 101(a)(2)
 
 
 5
 Plaintiffs contend that the IBT violated LMRDA § 101(a)(2) by partitioning local unions from Joint Councils 42 and 38 to create Joint Council 92. They argue that this action was taken with a retaliatory motive to discourage the exercise of their free speech rights.
 
 
 6
 It is settled law that the speech and assembly protections of § 101(a)(2) are not coextensive with that of the First Amendment. Ackley v. Western Conference of Teamsters, 958 F.2d 1463, 1475 (9th Cir.1992). The section provides:
 
 
 7
 Every member shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions ... Provided, That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules.
 
 
 8
 29 U.S.C. § 411(a)(2) (emphasis in original). With § 101(a)(2), "Congress sought to provide certain basic and fundamental rights to union members, while at the same time avoiding undue judicial interference with the mechanics of union self-governance." Ackley, 958 F.2d at 1475. The proviso was designed "to assure that the amendment would not unduly harass and obstruct legitimate unionism." United Steelworkers v. Sadlowski, 457 U.S. 102, 110, 102 S.Ct. 2339, 2345, 72 L.Ed.2d 707 (1982).
 
 
 9
 The Supreme Court has established a two part test for analyzing the speech protections of § 101(a)(2) of the LMRDA. See Sheet Metal Workers' v. Lynn, 488 U.S. 347, 109 S.Ct. 639, 102 L.Ed.2d 700 (1989); Finnegan v. Leu, 456 U.S. 431, 102 S.Ct. 1867, 72 L.Ed.2d 239 (1982). We first determine "whether petitioners' 'rights secured' under Title I were 'infringed' " by the alleged action. Finnegan, 456 U.S. at 440, 102 S.Ct. at 1872.
 
 
 10
 Title I protects membership rights-individuals' rights as union members. "It is readily apparent, both from the language of these provisions and from the legislative history of Title I, that it was rank-and-file union members-not union officers or employees, as such-whom Congress sought to protect." Id. at 437, 102 S.Ct. at 1871. "The language of § 411(a)(2) appears to guarantee a right of free speech only to individuals, not to entities such as local unions." United Bhd. of Carpenters and Joiners of Am., Lathers Local 42-L v. United Bhd. of Carpenters and Joiners of Am., 73 F.3d 958, 964 (9th Cir.1996).
 
 
 11
 The district court properly held that the Joint Councils lacked standing. Only the individual union members have standing to sue under 29 U.S.C. § 411(a)(2), Section 1 of the LMRDA. "[T]he LMRDA guarantees the right of free speech only to individual union members and not to the organization or members as a whole." Id. See also Stage Employees Local 796 v. Powell, 24 L.R.R.M. (BNA) 2053, 2057, 1986 WL 15481 (N.D.Cal.1986) (" § 411 confers certain rights on individual union members, not local unions as such"); Local No. 267 v. Ohio Carpenters Health & Welfare Fund, 926 F.2d 550, 556 (6th Cir.1991) ("We do not see how extending to component units within a labor organization the rights of members secured by the LMRDA would advance union democracy or protect the right of individual members[.]")
 
 
 12
 Riley and Hammack, as individual plaintiffs, did not demonstrate that their status as union members was affected. Both are still the presidents of their respective Joint Councils. The union members of Joint Council 42 and Joint Council 38, including Riley and Hammack, have not suffered any loss of membership rights. The partitioning and creation of Joint Council 92 did not affect the membership rights of Riley or Hammack as individual union members.
 
 
 13
 Even if the partitioning infringed rights protected by Title 1 of LMRDA, "[t]his is not of course the end of the analysis." Lynn, 488 U.S. at 354, 109 S.Ct. at 644. Step two of the analysis requires that the alleged interference "be judged by reference to the LMRDA's basic objective: 'to ensure that unions [are] democratically governed, and responsive to the will of the union membership[.]' " Id. In Lynn, the Supreme Court held that while the discharges involved in Finnegan may have "had some chilling effect on the free speech rights", this concern was "outweighed by the need to vindicate the democratic choice made by the union electorate." 488 U.S. at 355, 109 S.Ct. at 644.
 
 
 14
 The seven local unions alleged dissatisfaction with the cost and quality of services provided by Joint Council 42 and Joint Council 38. The IBT responded by creating Joint Council 92.
 
 
 15
 II. Section 101(a)(4) "Right to Sue"
 
 
 16
 Riley and Joint Council 42 contend that the IBT has retaliated against them for filing suit. We reject the argument. Nothing in the record substantiates it.
 
 III. The Teamsters Constitution and § 301
 
 17
 The Teamsters Constitution is a contract between labor organizations enforceable by the federal courts under § 301(a) of the LMRA. United Ass'n of Journeymen v. Local 334, 452 U.S. 615, 627, 101 S.Ct. 2546, 2553, 69 L.Ed.2d 280 (1981). Plaintiffs contend that the IBT breached Article XV, Section 1(a) of the Teamsters Constitution by creating Joint Council 92. This section provides: "Whenever three (3) or more Local Unions are located in one (1) city they shall form a Joint Council, but where there are only a few Local Unions in small cities or towns, they shall affiliate with the Joint Council in the large cities."
 
 
 18
 There is a well-established federal policy of avoiding unnecessary interference in the internal affairs of unions. Motion Picture & Videotape Editors Guild v. Int'l Sound Technicians, 800 F.2d 973, 975 (9th Cir.1986). "Absent a specific limitation in a union constitution, this court will not interfere with the efforts of a union's leaders to manage the affairs of their organization." Id. at 976. The IBT General Executive Board has not interpreted Article XV, Section 1 of the Constitution to limit the number of Joint Councils within a single geographic region. "[A] union's interpretation of its own rules, regulations, and constitution is entitled to a high degree of deference." Local 42-L, 73 F.3d at 961. Further, Joint Council 42 and Joint Council 38 shared overlapping geographical regions before the creation of Joint Council 92.
 
 
 19
 Courts must be careful not to undermine union self-government. "[A]bsent bad faith or special circumstances, an interpretation of a union constitution by union officials ... should not be disturbed by the court." Editors Guild, 800 F.2d at 975. Bad faith can be found on evidence that union officials acted contrary to the International's best interest, out of self-interest, or in an unconscionable or outrageous way. Local 1052 v. Los Angeles County Dist. Council of Carpenters, 944 F.2d 610, 615 (9th Cir.1991). The decision to create Joint Council 92 was the response to an application from the local unions and was made for allegedly legitimate reasons. "Once the International has given a reasoned and founded explanation for the [action], judicial inquiry into the decision's reasonableness as a tell-tale for bad faith must end." Id. The IBT did not breach the terms of the IBT Constitution by creating Joint Council 92.
 
 IV. Preliminary Injunction
 
 20
 To obtain a preliminary injunction, a party must show either: (1) a likelihood of success on the merits and the possibility of irreparable injury, or (2) the existence of serious consequences going to the merits and the balance of hardships tipping in its favor. Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc., 762 F.2d 1374, 1376 (9th Cir.1985). Plaintiffs have failed to make the requisite showing. Affirmance of the district court's grant of summary judgment moots the preliminary injunction appeal. See Mt. Graham Red Squirrel. v. Madigan, 954 F.2d 1441, 1450 (9th Cir.1992).
 
 
 21
 AFFIRMED.
 
 
 
 [1]
 Joint Councils are intermediate organizational bodies made up of three or more local unions. They are subordinate to the IBT's General Executive Board and are governed by the IBT Constitution